IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
WINSTON-SALEM DIVISION

| | |
|---|---|
| C Change Surgical LLC,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>Medical Solutions, Inc.,<br><br>　　　　　Defendant. | Civil Action No. 1:06-CV-785-TDS-WWD |

**MEMORANDUM IN SUPPORT OF PLAINTIFF C CHANGE SURGICAL'S MOTION TO CONTINUE STAY DURING REEXAMINATION OF PATENTS-IN-SUIT**

Plaintiff C Change Surgical, LLC ("C Change") respectfully seeks the continuation of the stay currently in place in this litigation until the conclusion of the reexamination proceedings of the patents-in-suit (U.S. Patent Nos. 6,259,067 and 6,384,380) by the United States Patent and Trademark Office ("Patent Office").

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Defendant Medical Solutions, Inc. ("MSI") filed a complaint against C Change for infringement of U.S. Patent Nos. 6,259,067 and 6,384,380 in the United States District Court for the District of Columbia (the "D.C. Action") on July 13, 2006. In September 2006, C Change moved to dismiss the D.C. Action on the grounds that it was not subject to personal jurisdiction. Fearing that MSI would simply file a new suit in another inconvenient and/or inappropriate venue, at the same time, C Change initiated this

declaratory judgment action in this Court. C Change prevailed on both its motion to dismiss and MSI's appeal of the issue.

After *ex parte* reexamination requests were filed for both patents-in-suit, C Change moved to stay this action pending the reexaminations. (Dkt. No. 20.) On April 22, 2009, this Court stayed the action until the Patent Office made a decision on the reexamination requests. (*See* Minute Order of April 22, 2009.) The Patent Office ordered the reexamination of both patents-in-suit on July 16, 2009, finding a substantial new question of patentability as it related to each and every claim of both of the patents-in-suit. C Change then renewed its motion to stay pending the outcome of the reexamination proceedings. (Dkt. No. 38.)

In its Order dated August 21, 2009, the Court granted C Change's Renewed Motion to Stay and directed C Change to notify the Court when the Patent Office issued its First Office Action in the *ex parte* reexaminations of the patents in suit. (Dkt. No. 45.) C Change, duly notified the court of the First Office Actions on November 25, 2009. (Dkt. No. 47.) The Court's Order further indicated that, absent application by C Change to extend the stay pending reexamination, the stay would automatically expire ten (10) calendar days after the First Office Action. (Dkt. No. 45.) Having obtained an extension of time to submit its response, C Change hereby respectfully petitions the Court for the continuation of the current stay until such time as the Patent Office completes its reexamination of all claims of the patents-in-suit.

In the First Office Actions from the Patent Office, the Examiner found that claims 1-34 of U.S. Patent 6,259,067 (the "'067 patent") were patentable and that claims 35-36 were rejected under 35 U.S.C. § 102(e) as being anticipated by U.S. Patent 5,862,672 to Faries *et al*. (the "'672 patent"). (*See* Dkt. No. 47, Ex. A.) In determining that claims 35-36 were rejected, the Examiner made the determination that each and every element of the rejected claims were present in the '672 patent. (*Id*.)

With respect to U.S. Patent 6,384,380 (the "'380 patent"), the Examiner found that claims 1-11, 17-26 and 34-43 were patentable and that claims 12-16 and 27-33 were unpatentable. Specifically, the Examiner determined that claims 12, 27, 32 and 33 were anticipated under 35 U.S.C. § 102(e) by the '672 patent. Additionally, claims 13-16 and 28-31 were rejected under 35 U.S.C. § 103(a) as being unpatentable over the '672 patent in view of U.S. Patent 5,805,455 to Lipps. (*See* Dkt. No. 47, Ex. B.) In this Office Action, the Examiner also made determinations about both the scope of certain claim terms and the scope and content of prior art.

**ARGUMENT**

**I.   The Stay Is Still Appropriate.**

This Court should continue the stay of this litigation for all of the reasons articulated in C Change's previous motion to stay. (*See*, Dkt. Nos. 20, 21, 26, 38, and 39.) A stay pending the final determination of the reexamination of the patents-in-suit is warranted for the following reasons: (1) a stay would avoid the waste of judicial

resources and avoid duplicative proceedings; (2) the litigation is still in its very early stages; (3) the reexamination is proceeding with special dispatch with the First Office Actions being received within 4 months of the determination to order reexamination; (4) the stay will simplify the issues and streamline the trial.

First, a stay would avoid the waste of judicial resources by avoiding duplicative proceedings. Even though the claims that have been rejected by the Patent Office are not among the asserted claims, the Patent Office has already made determinations regarding claim terms present within the asserted claims. (*See* Dkt. No. 47, Ex. A and B.) For example, the examiner has interpreted the claim term "controller" of non-asserted claim 27 of the '380 patent to mean a device that adjusts the current passing through a heating element. (*See*, Dkt. No. 47, Ex. B at 5-6.) This claim term is also present in each of the following *asserted* claims: 1, 4, 5, 6, 7, 8, 17, 19, 21, 22, and 23. Thus, it is highly likely that in its responses to the rejections in the reexaminations, MSI will make arguments regarding the scope or meaning of claim terms, such as "controller," that will be relevant to the asserted claims in this litigation. Further, the First Office Actions have made determinations regarding the content and scope of the prior art. (*Id.*) For example, the First Office Action in the '067 reexamination found that the prior art disclosed at least the following claim elements of a rejected claim: (1) a temperature control system, (2) a housing, (3) a plurality of heating chambers, (4) at least two chambers associated with different temperatures, and (5) a controller. (*Id.*, Ex. A at 4-5.) In response, MSI will likely advance arguments in the reexamination related to these claim elements. Each of

4

these claim elements are present in one or more of the asserted claims of the patents-in-suit. (*See, e.g.*, asserted claims from the '067 patent, including claim 1 which recites a temperature control system and a housing; claim 5 which recites a temperature control system, a housing, and a plurality of heating chambers; and claim 8 which recites a temperature control system, a housing, a plurality of heating chambers, at least two chambers associated with different temperatures, and a controller). Because the rejected claims and the asserted claims contain many of the same claim terms, it is highly likely that the reexaminations will impact claims, claim terms, and the scope of prior art that are relevant to the litigation. Accordingly, there is a significant risk of duplicative and potentially inconsistent rulings should this case go forward while the reexaminations are pending.

Second, the litigation is still in its early phase and therefore the stay will not cause undue prejudice to the parties. To date, the parties have only conducted limited discovery, such as the exchange of Initial Disclosures; a voluntary inspection of the Accused Product; and the serving of "Infringement Contentions" and Requests for Admission by the Defendant. The parties have yet to even negotiate or finalize a protective order. Therefore, granting a stay in this case, still in its initial stages is appropriate. *See ASCII Corp. v. STD Entm't USA, Inc.*, 844 F. Supp. 1378, 1381 (N.D. Cal. 1994) (granting a stay when the parties had "undertaken little or no discovery").

Third, the reexamination is proceeding with special dispatch. The First Office Action was issued in about 4 months from the grant of reexamination, which is well

5

within the Patent Office's guidelines for the issuance of First Office Actions. Further, in cases where the litigation is stayed, such as it is in this case, the Patent Office further expedites the reexamination by shortening the statutory period for responding to Office Actions to one month. *See* Manual of Patent Examining Procedure (MPEP) § 2263 (Dkt. 21, Ex. G.) As C Change may make no further submissions to the Patent Office regarding the reexamination proceedings in progress, it is the Defendants alone that control the duration of the reexamination proceedings. *See* MPEP § 2254 (Dkt. 26, Ex. O.)

Finally, continuing the stay will simplify and streamline the issues for trial. While the litigation is stayed, the patents are being examined by the Patent Office, which will create a record regarding the content and scope of the prior art as well as the meaning of relevant claim terms. In the First Office Actions, the Examiner has already made determinations about certain claim terms that are at issue in the litigation. For example, the Examiner has interpreted the phrase "facilitates even heat distribution." (*See* Dkt. No. 47, Ex. A at pg. 9.) MSI has asserted claims against C Change that contain this claim element. Thus, as MSI and the Patent Office developed the record in the reexamination, there will be a direct impact on issues relevant to the case. By allowing the reexamination to proceed while the case is stayed, the stay will simplify and streamline the issues for trial. Moreover, because C Change agrees to a stipulation, the universe of prior art that may be at issue during the litigation will be more narrow than it was before the reexamination.

6

Therefore, for all of the reasons articulated herein, C Change respectfully requests that the current stay be continued, subject to the stipulation proposed below, until the conclusion of the reexamination proceedings by the Patent Office.

## II. The *Metacafe* Stipulation is Appropriate.

The Court invited C Change to apply for the continuation of the stay "only on a stipulation by Plaintiff similar to the stipulation entered by the court in *Antor Media Corp. v. Nokia, Inc.*, No. 2:05-cv-186-DF (E.D. Tex. Sept. 27, 2006)" ("*Nokia*"). In *Nokia*, Judge Folsom stayed the case on the condition that the parties agree to the following stipulation:

> The parties agree that the stay will be granted only on condition [an individual defendant] agrees not to challenge the [asserted] patent based on any prior art printed publications that were considered in the reexamination process.

*See Nokia*, Dkt. No. 410 (attached hereto as Ex. A).

C Change proposes that the stay in this case be continued upon entry of the following similar stipulation:

> The Plaintiffs agree that they will not be allowed to argue anticipation of the asserted claims at trial based upon any printed publications or patents applied by the examiner in an Office Action issued during the reexaminations. However, the Plaintiffs will be permitted to rely for obviousness on the combination of a printed publication or patent that was applied by the examiner in an Office Action issued during the reexamination with prior art that was not applied by the examiner in an Office Action issued during the reexaminations.[1]

---

[1] "Applied" means expressly used by the examiner to reject or allow an asserted claim after the date of the stipulation.

7

C Change's proposed stipulation is based on the stipulation entered by Judge Folsom in *Antor Media Corp. v. Metacafe, Inc. et al.*, 2:07-cv-102-DF, Dkt. No. 234 (E.D. Tex. March 27, 2007) (*Metacafe*) (attached hereto as Ex. B), a case related to the *Nokia* case.[2]

The stipulation entered in the *Metacafe* case and proposed by C Change addresses two deficiencies of the *Nokia* stipulation. First, C Change's stipulation removes the ambiguity over whether prior art from the reexamination could be used for obviousness purposes in combination with new prior art. Second, C Change's stipulation prevents the abusive reexamination tactic of inundating the Patent Office with prior art references.

### A. The Nokia Stipulation Is Ambiguous And Unfairly Limiting.

The *Nokia* stipulation is ambiguous and could be interpreted to unfairly prohibit the use, for obviousness purposes, of prior art from the reexamination in combination with new prior art. The *Metacafe* stipulation removes this ambiguity by providing that a litigant can use prior art from the reexamination for obviousness purposes so long as it is used in combination with new prior art. Precluding a litigant from using prior art from the reexamination for obviousness purposes, as the *Nokia* stipulation might be interpreted to do, unfairly deprives the litigant and courts from legitimate invalidity arguments. Such a result undermines the public policy of having valid patents. Clarifying the scope of the

---

[2] C Change notes that the parties in the *Metacafe* case agreed that the patent owner could move to lift the stay if the Patent Office confirmed the patentability of one or more of the asserted claims. *Metacafe*, Dkt. No. 234. (Ex. B) As discussed *supra*, continuing the stay in this case is appropriate, especially given the overlap of claim elements between the confirmed and rejected claims.

*Nokia* stipulation also increases judicial efficiency by providing guidance to the parties as to the scope of discovery and, ultimately, provides for a more focused invalidity case at trial.

In *DataTreasury Corp. v. Wells Fargo & Co., et al.*, 2:06-cv-72-DF, Dkt. No. 401 (E.D. Tex. Feb. 24, 2006) (*DataTreasury*) (attached hereto as Ex. C), the defendants also noted that the *Nokia* stipulation was ambiguous and could be interpreted to unfairly limit a defendant's right to use prior art. *DataTreasury*, Dkt. No. 401 at 4 (Ex. C) (arguing that the uncertainty of the scope of the stipulation creates a chilling effect with respect to acceptance of the stipulation). Over the plaintiff's objections, Judge Folsom modified the *Nokia* stipulation by expressly providing that a defendant could use prior art from the reexamination for obviousness purposes in combination with new prior art.[3] *Id.*, Dkt. No. 411 (attached hereto as Ex. D). The *DataTreasury* stipulation read as follows:

> As a condition of the stay, Defendants may not argue invalidity at trial based on one or more prior art printed publications that were submitted by the petitioner in the reexamination proceedings. However, Defendants will be permitted to rely for obviousness on the combination of a printed

---

[3] Judge Folsom originally ordered a stay in the *DataTreasury* litigation subject to the *Nokia* stipulation. *DataTreasury*, Dkt. No. 326 (attached hereto as Ex. E). Nine of eleven defendants refused to agree to the court's proposed *Nokia* stipulation. *See*, Dkt. Nos. 335-341, 343, and 346 attached hereto as Ex. F). One of the *DataTreasury* defendants then moved to modify the *Nokia* stipulation citing its chilling effect. *Id.*, Dkt. No. 411 (Ex. D). The same defendant also filed an *amicus* brief in a related *DataTreasury* litigation asking for similar relief. *See DataTreasury v. Wells Fargo & Co. et al.*, 2:05-cv-291-DF-CMC, Dkt. No. 93 (E.D. Tex. June 28, 2005) (citing the chilling effects of the ambiguous *Nokia* stipulation) (*DataTreasury II*) (attached hereto as Ex. G). After hearing oral arguments on the issue, Judge Folsom selected the modified stipulation over the *Nokia* stipulation in both *DataTreasury* litigations. *DataTreasury*, Dkt. No. 411 (Ex. D); *DataTreasury II*, Dkt. No. 98 (attached hereto as Ex. H).

> publication reference that was submitted by petitioner in the reexamination with prior art that was not so submitted.

*Id.*, Dkt. No. 411 (Ex. D). In a subsequent *DataTreasury* proceeding related to a different set of patents-in-suit, the parties reached consensus to stay the case but again disputed the appropriate scope of the stipulation. *Id.*, Dkt. No. 796 (attached hereto as Exhbit I). In deciding the issue for a second time, Judge Folsom again selected the *DataTreasury* stipulation over the *Nokia* stipulation. *Id.*, Dkt. No. 798 (attached hereto as Ex. J).

Given the ambiguity in the *Nokia* stipulation and the potential for unfairness, this Court should allow the clarifying modification that was twice adopted by Judge Folsom in *DataTreasury*. C Change's proposed stipulation tracks the *DataTreasury* stipulation in this regard and is appropriate for this case.

### B. The *Metacafe* Stipulation Prevents Abusive Reexamination Tactics.

The *Nokia* stipulation is also deficient in that it allows a patent owner to inundate the Patent Office with prior art, effectively overwhelming the examiner with a voluminous filing. *See, e.g.*, *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1184 (Fed. Cir. 1995) ("'burying' a particularly material reference in a prior art statement containing a multiplicity of other references can be probative of bad faith.") In the *Metacafe* case, the patent owner submitted over 1,200 references to the Patent Office. *Metacafe*, Dkt. No. 98, Ex. A (attached hereto as Ex. K). As noted by the Manual of Patent Examining Procedure, "the requisite degree of consideration to be given to [submitted prior art] will be normally limited by the degree to which the party filing the information citation has

explained the content and relevance of the information." *See* MPEP § 2256, (attached hereto as Ex. L). Thus, the potential for abuse is significant.

Although MSI may not attempt this tactic, it would be reasonable to prevent it. The *Nokia* stipulation provides that prior art "considered" by the examiner is precluded from use in the litigation. C Change's proposed stipulation modifies the *Nokia* stipulation to preclude prior art that was "applied by" the examiner. This modification means that, unlike the *Nokia* stipulation, C Change's stipulation only precludes prior art that is expressly used by an examiner to reject or allow a claim. Just as in *Metacafe*,[4] C Change's proposed stipulation only precludes prior art that was substantively considered by the Patent Office. C Change's proposed stipulation prevents abusive reexamination tactics, such as attempts to "bury" material prior art, and is appropriate for this case.

## CONCLUSION

For all of the foregoing reasons, C Change respectfully requests that the Court continue the stay conditioned on the *Metacafe* stipulation.

---

[4] Although the court in *Metacafe* initially denied the defendants' request for a stay on other grounds, *Metacafe,* Dkt. No. 166 (attached hereto as Ex. M), the court had an opportunity to consider the parties' extensive briefing on the appropriate scope of the stipulation. *See, e.g.*, *Metacafe*, Dkt. Nos. 47, 87, 98, and 101 (attached hereto as Ex. N). Once the parties reached consensus on the stay, Judge Folsom entered the *Metacafe* stipulation with the same "applied by" language proposed by C Change. *Id.*, Dkt. No. 235 (attached hereto as Ex. O).

This, the 10th day of December 2009.

/s/ Tonya R. Deem
Steve Gardner
N.C. State Bar No. 20984
Email: sgardner@kilpatrickstockton.com
Tonya R. Deem
N.C. State Bar No. 23075
Email: tdeem@kilpatrickstockton.com
Matias Ferrario
N.C. State Bar No. 38723
Email: mferrario@kilpatrickstockton.com

KILPATRICK STOCKTON LLP
1001 West Fourth Street
Winston-Salem, NC 27101-2400
Telephone: (336) 607-7300
Facsimile: (336) 607-7500

*Attorneys for Plaintiff C Change Surgical LLC*

# CERTIFICATE OF SERVICE

I hereby certify that on the 10th day of December, 2009, the foregoing MEMORANDUM IN SUPPORT OF PLAINTIFF C CHANGE SURGICAL LLC'S MOTION TO CONTINUE STAY PENDING COMPLETION OF REEXAMINATIONS OF PATENTS-IN-SUIT was electronically filed with the Clerk of Court using the CM/CEF System that will send notification of such filing to the following:

    William K. Davis
    Alan M. Ruley
    Bell Davis & Pitt, P.A.
    Century Plaza
    100 N. Cherry Street, Suite 600
    Winston-Salem, NC 27101
    Email: wdavis@belldavispitt.com
    Email: aruley@belldavispitt.com

    John P. Moran
    Holland & Knight, LLP
    2099 Pennsylvania Ave., N.W., Suite 100
    Washington, D.C. 20006
    Email: john.moran@hklaw.com

    /s/ Tonya R. Deem
    Tonya R. Deem
    *Attorney for Plaintiff*